**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tammy Jo Dickson,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-00931-PHX-DWL<br><br>**ORDER** |

At issue is the denial of Plaintiff Tammy Jo Dickson's applications for disability insurance benefits and supplemental security income by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, "Pl. Br.") Defendant SSA Commissioner's Response Brief (Doc. 14, "Def. Br."), and Plaintiff's Reply Brief (Doc. 15, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 11, "R.") and reverses and remands for further proceedings.

**I.    BACKGROUND**

Plaintiff received disability benefits between March 2001 and June 2013. (R. at 39, 76.) She stopped receiving benefits in June 2013 based upon a determination that her "medical condition improved." (*Id.* at 42.)

In response, on October 6, 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income for a period of disability beginning on September 1, 2013. (*Id.* at 16.) She appeared before the ALJ on October 1, 2018, and the ALJ issued a decision on February 19, 2019. (*Id.* at 16, 28.) As discussed in more detail below, the ALJ concluded that Plaintiff was not disabled between September 1, 2013 and April 12, 2016 but again became disabled as of April 12, 2016. The Appeals Council later denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (*Id.* at 1-3.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: degenerative disc disease of the lumbar spine, eating disorder, substance abuse disorder, depression, anxiety, personality disorder, and attention deficit disorder. (*Id.* at 19.)

The ALJ found that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"), for the period "prior to April 12, 2016," as follows:

> [Plaintiff] had the [RFC] to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday. She can frequently climb ramps and stairs, but never ladders, ropes or scaffolds. She can occasionally balance, stoop and crawl. She can frequently handle and finger, bilaterally. She must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and work hazards. She can perform simple unskilled work in a nonpublic setting, and in a setting where she is capable of accepting routine supervision and can interact with co-workers on a non-collaborative and superficial basis. She is capable of adapting to a routine and predictable work environment, recognize typical hazards, travel to a routine location, and set goals independently. (A non-public setting is one that does not require more than occasional and superficial interactions with the public and co-workers.)

(*Id.* at 21.) Accordingly, the ALJ found that before April 12, 2016, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.* at 26-27.) Finally, the ALJ also found that Plaintiff's RFC took a more restrictive turn

- 2 -

on April 12, 2016 (*id.* at 23) and that, as of that date, there were no jobs that exist in significant numbers in the national economy that Plaintiff could have performed. (*Id.*) Thus, the ALJ's ultimate determination was that Plaintiff was not disabled before April 12, 2016 but was disabled after that date. (*Id.*)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines

whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III.   ANAYSIS**

Plaintiff raises three issues for the Court's consideration. First, Plaintiff argues the ALJ erred at step five by failing to identify specific jobs she could have performed between September 1, 2013 and April 12, 2016. (Pl. Br. at 8-10.) Second, Plaintiff argues the ALJ erred in rejecting her symptom testimony. (*Id.* at 10-13.) Third, Plaintiff argues the ALJ erred in discounting the opinion of nurse practitioner ("NP") Pamela Perry.[1] (*Id.* at 13–14.) Plaintiff contends the remedy for these errors is not simply to remand for further proceedings but to remand for calculation of benefits. (*Id.* at 14-16.) In response, the Commissioner concedes that the ALJ erred at step five but disagrees with Plaintiff's other assignments of error and contends the proper remedy is a remand for further proceedings.

For the following reasons, the Court agrees with the Commissioner that the only error here occurred during step five and that the proper remedy for that error is a remand for further proceedings.

**A.   The ALJ did not err in rejecting Plaintiff's symptom testimony**

Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 10-13.) An ALJ performs a two-step analysis when evaluating a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell*

---

[1] The ALJ incorrectly refers to Pamela Perry as Dr. Perry. Below, the Court analyzes Plaintiff's challenge to the rejection of NP Perry's opinion under the germane reasons standard, which applies to opinions from an NP, rather than under the treating physician standard.

- 4 -

*v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, if so, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id*. at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ chose to discount Plaintiff's symptom testimony, as it related to Plaintiff's symptoms before April 2016, for three reasons: (1) because Plaintiff's "course of treatment and diagnostic tests and examination results do not appear to be commensurate with the symptomology reported," in part because Plaintiff "admitted to being non-compliant with therapy treatment recommendations in refusing to go to therapy"; (2) because Plaintiff "is able to engage in good routine activities of daily living, albeit not without limitations"; and (3) because "while there is objective medical evidence documenting the impairments, findings and examination results are generally unremarkable." (R. at 22.)

Under Ninth Circuit law, the ALJ's first proffered rationale for discounting Plaintiff's symptom testimony—non-compliance with therapy treatment recommendations—is a permissible basis for discounting such testimony. *See, e.g., Chaudry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (affirming ALJ's rejection of symptom testimony in part because "Chaudhry repeatedly failed to seek treatment for depression or follow prescribed courses of treatment"); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Another such form of evidence is an

unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. While there are any number of good reasons for not doing so, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.") (citations omitted).

The ALJ's finding of non-compliance with treatment recommendations was also supported by substantial evidence. Indeed, the doctor's notes from a psychiatric disability examination in May 2013 specifically state that Plaintiff "admits non-compliance with therapy treatment recommendations in that she has refused to go to therapy." (R. at 447.) In her brief, Plaintiff argues the ALJ should have disregarded this statement because there is evidence that she routinely sought treatment during the period in question (and, thus, her one-time disregard for treatment recommendations was aberrational). (Pl. Br. at 12-13.) The difficulty with this approach is that, although Plaintiff's interpretation of the facts may be plausible, the ALJ could have rationally reached a different interpretation. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Given this backdrop, there is no need to evaluate the sufficiency of the ALJ's other proffered reasons for rejecting Plaintiff's symptom testimony. Plaintiff has not shown error with respect to this issue.

**B.    The ALJ did not err in discounting NP Perry's opinion**

Plaintiff contends the ALJ erred in assigning moderate weight to NP Perry's opinion. (Pl. Br. at 13–14.) When Plaintiff filed her applications, the regulations in effect stated that only licensed physicians, licensed or certified psychologists, and certain other specialists were considered "acceptable medical sources." 20 C.F.R. § 404.1513(a). Now, NPs are considered "acceptable medical sources" under 20 C.F.R. § 404.1502(a)(7), but only for claims filed on or after March 27, 2017. *Id.* As such, NP Perry is not considered an "acceptable medical source" and her opinion is considered testimony from an "other

source." 20 C.F.R. § 404.1513(a). An ALJ may discount "other source" opinions by providing a germane reason for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015). *See also Burkett v. Saul*, 806 Fed. Appx. 509, 512 (9th Cir. 2020) ("An other source . . . is not entitled to the same deference as a licensed physician. An ALJ may discount other-source opinions so long as they provide a germane reason to do so.") (citations and internal quotation marks omitted).

In August 2018, NP Perry completed a mental RFC assessment of Plaintiff. (R. at 1430-34.) NP Perry concluded Plaintiff could not perform work activities independently, appropriately, effectively, and on a sustained basis in a regular work setting. (*Id.* at 1432-33.) NP Perry opined Plaintiff cannot work and that even though Plaintiff had been sober for seven months, there was a risk of relapse. (*Id.* 1434.) The ALJ chose to assign "moderate weight" to this opinion for two reasons: (1) "[t]here is little explanation and clinical findings to support the opinions, which appear in the form of a check-the-box and fill-in-the-blank questionnaire"; and (2) "the opinion that the claimant cannot work is an issue reserved to the Commissioner and therefore no special significance is [assigned to] that part of the opinion." (*Id.* at 25.)

In *Molina*, an ALJ discounted the medical opinion of an "other source" because the opinion "consisted primarily of a standardized, check-the-box form in which [the other source] failed to provide supporting reasoning or clinical findings, despite being instructed to do so." 674 F.3d at 1111. In the course of affirming, the Ninth Circuit specifically held that this explanation constituted a "germane," "permissibl[e]" reason for rejecting the opinion of an "other source." *Id.* Thus, the first reason provided by the ALJ in this case for rejecting NP Perry's opinion—that it was poorly supported and explained and took the form of a standardized check-the-box form—was a legally valid reason.

This conclusion was also supported by substantial evidence. Although it is true, as Plaintiff notes in her brief, that the form used by NP Perry contained "both checkboxes and areas of explanations for her opinions" (Pl. Br. at 14), the problem here is that the areas of explanation were not filled out in any detail. For example, in response to the question

"Describe the clinical findings including results of mental status administrative that demonstrate the severity of your patient's mental impairments and symptoms," NP Perry wrote the following: "Chronic/Isolation." (R. at 1430.) It is difficult to imagine a less helpful or descriptive answer. The bare pairing of an adjective and a noun, tied together with a forward slash but unaccompanied by any reasoning or explanation, is hardly sufficient. At any rate, this marks another instance where the ALJ could have rationally interpreted the form as lacking sufficient explanatory detail—an interpretation this Court may not second-guess. *Thomas,* 278 F.3d at 954.[2]

Finally, even assuming the ALJ erred by discounting NP Perry's opinion, any error was harmless. The ALJ analyzed NP Perry's opinion, which was rendered in August 2018, in the portion of the order addressing whether Plaintiff was disabled *after* April 12, 2016 (which, the ALJ ultimately decided, she was). As such, it is unclear whether the ALJ's decision to discount NP Perry's opinion had any bearing on the ALJ's assessment of Plaintiff's disability during the 2013-2016 timeframe. *Tommasetti,* 533 F.3d at 1038 ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (internal quotations marks omitted).

### C. The appropriate remedy is to remand for further proceedings

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in a remand of her case for payment of benefits rather than for further proceedings. (Pl. Br. at 14-16; Reply at 2-3.) The credit-as-true rule only applies in cases where three elements are present. *Treichler v. Comm'r of SSA,* 775 F.3d 1090, 1099-1102 (9th Cir. 2014). First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical

---

[2] The Commissioner argues the ALJ also properly rejected NP Perry's opinion because it was "contradicted by opinions from State agency review consultants." (Def. Br. at 15-16.) Whether or not this is true, the ALJ did not identify such conflicts as one of her reasons for rejecting NP Perry's opinion. (R. at 25.) As the Ninth Circuit has explained, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

In this case, the ordinary remand rule applies. Plaintiff has only established that the ALJ committed one form of error during the underlying proceeding—an error during step five. Specifically, the ALJ erred by relying on "the grids" in support of her conclusion that there were a significant number of jobs existing in the national economy that Plaintiff could have performed from September 2013 to April 2016 in light of Plaintiff's RFC during that period. (R. at 26-27.) As the Commissioner acknowledges, this was error because "[t]he grids are inapplicable and a vocational expert is necessary . . . when a claimant's non-exertional limitations are 'sufficiently severe'" and, here, "there appeared to be significant non-exertional limitations, particularly . . . mental and social limitations, in the ALJ's RFC finding for the [2013-2016] period at issue." (Def. Br. at 4.) Thus, "vocational expert testimony [was] necessary to make a proper step five determination." (*Id.*)

As it turns out, a vocational expert did testify during Plaintiff's hearing. (R. at 57-64.) Notably, the expert stated that a person with Plaintiff's RFC during the 2013-2016 timeframe could perform two different jobs that exist in significant numbers in the national economy: (1) charge account clerk and (2) addresser. (*Id.* at 59-60.) Given this backdrop, it would be particularly inappropriate to remand for an award of benefits here. Although Plaintiff argues that the vocational expert "had inadequate experience to support her testimony" concerning the two jobs (Reply at 3), factual disputes of this sort should be resolved, in the first instance, by the ALJ. Additionally, the vocational expert's testimony provides this Court with at least some uncertainty as to the outcome of the proceeding upon

remand, and the presence of such uncertainty precludes a remand for an award of benefits under *Treichler*.

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with the Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 3rd day of August, 2021.

Dominic W. Lanza
United States District Judge